I,CARAWAY, J.
The defendant’s delay in payment of a health insurance claim caused the filing of this suit. Although, before trial, the defendant paid the claim, plaintiff continued to seek the statutory attorney’s fee penalty for defendant’s prior refusal to pay. The trial court determined that the defendant’s defense against payment was reasonable and declined an award of attorney’s fees. Plaintiff appeals, and finding no error in the trial court’s ruling, we affirm.

Facts

St. Francis Medical Center, Inc. formerly employed Sallie S. Wood and furnished medical benefits coverage under its “Flex-Care Medical Plan” or “MedFlex” employee benefits cafeteria plan. The plan booklet identified the following as an excluded service, which is the source of the controversy in this case:
No benefits under the FlexCare Plans shall be provided for any of the foEow-ing:
(aa) Breast reduction of less than 500 grams per breast.
Wood consulted Dr. Timothy Mickel, a plastic surgeon, concerning breast reduction surgery. After a pre-certification process for the operation, the benefits estimate under St. Francis’ plan would provide coverage for $3,840 of the $5,300 surgical fee for the procedure. The estimate also stated the following:
• annual [$500.00] deductible had been satisfied.
• in order for this procedure to be covered, a minimum of 500 grams of tissue wiE have to be removed from each breast.
!?• this estimate serves as a verification of coverage as of this date and not a guarantee of payment. AE claims are subject to eligibiEty at the time service is rendered.
On October 3, 2000, Wood underwent büateral breast reduction surgery and abdominal liposuction. In addition to the plastic surgeon’s $5,300 fee for the breast surgery, other fees charged in connection with the in-patient surgery included $1,500 plastic surgeon’s fee for Eposuction, $1,566 for anesthesia services, and $14,881 for hospital charges.
Two months after the surgery, the administrator of St. Francis’ FlexCare plan informed Wood that the medical expenses were ineligible for consideration because the post-operative pathology reports disclosed that Dr. Mickel had only removed 381 grams of breast tissue from the right breast and 454 grams of breast tissue from the left breast. In response, Wood filed this action aEeging that St. Francis’ denial of her claim was arbitrary and capricious and constituted bad faith. Wood prayed for penalties and attorney’s fees under La. R.S. 22:657(A).
FoEowing removal of the suit to federal court and a subsequent remand, St. Francis answered the suit. St. Francis argued that Wood was not entitled to benefits because when less than 500 grams of tissue was removed from each breast, the procedure fell within a clearly defined plan exclusion. St. Francis moved for summary judgment in the trial court. When its motion was denied, it sought a supervisory writ of review from this court. This court then denied St. Francis’ request, noting that the pre-certification process for the operation might provide a basis for plaintiffs recovery.
| oBefore trial, St. Francis voluntarEy paid $6,604.80, the amount the plan would have paid if Wood’s surgery was covered. Also, at the time of trial, Wood apparently waived her claim to statutory penalties. Accordingly, the only issue for trial was whether or not Wood was entitled to attor *215 ney’s fees. In written reasons, the trial court denied Wood’s claim for attorney’s fees and dismissed the suit. It is from this judgment that Wood appeals.

Discussion

Wood argues that the trial court erred when it denied her claim for attorney’s fees under La. R.S. 22:657(A), which provides as follows:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court....
(Emphasis added.) Appellant also argues that FlexCare’s exclusion of benefits for breast reduction surgery within the 500-gram parameter constitutes an unreasonable limitation on a physician’s judgment as to the medical necessity for such a procedure and is therefore against public policy.
| ¿Testifying on behalf of Wood, Dr. Mickel reported that Wood suffered from chronic neck, back and shoulder pain. The breast reduction surgery therefore served a medically necessary purpose. Dr. Mick-el also testified that the 500-gram requirement, which is a typical exclusion in health plans, is arbitrary and not based upon rational medical reasoning.
While we need not decide whether this provision of the health insurance policy is against public policy, a review of our law on that subject is instructive for a determination of whether St. Francis was unreasonable in seeking to enforce its contract. Our Civil Code provides that “persons may not by their juridical acts derogate from laws enacted for the protection of the public interest.” La. C.C. art. 11. Specifically dealing with conventional obligations, Article 1968 provides:
The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.
In Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976), the court determined that a forfeiture provision in an employee retirement plan was against public policy. The employee lost his job because of an economic downturn and would have lost certain retirement benefits as well because of the forfeiture provision. While the court could not find any direct expression of legislative will concerning the retirement contract, it found a violation of public policy as reflected in the prohibition against wage forfeitures in our employment law. The court’s process therefore, for determining public policy, was to look to the legislature for a direct statute or for statutory provisions in closely related settings.
|Jn this case, Wood cites no statute where the legislature has shown a policy toward the regulation of health insurance contracts in a manner which would prevent this minimum 500-gram requirement in the contract. Wood offers no jurispru *216 dence reflecting the recognition of public policy against such contract. Therefore, under the statutory test for the attorney’s fee claim at issue, there is nothing that would put a reasonable and prudent businessman on guard that this FlexCare plan exclusion is against public policy.
St. Francis’ opposition to the payment of Wood’s claim rested on a clear contractual provision. The pre-certification procedure gave further notice to Wood that the exclusion might be applicable. Wood did not assert that she was misled. Therefore, St. Francis’ attempt to enforce compliance with the parties’ contract was reasonable under the circumstances of this case, and the trial court’s finding of no violation under the statute for the award of attorney’s fees is affirmed.
Costs of appeal are assessed to appellant.
AFFIRMED.